## EVELYN S. KELLY *vs.* THE HUBER BAKING COMPANY.

*Bills of Exception—Delay in Signing—Waiver—Automobile*
*Collision—Contributory Negligence—Evidence—*
*Proximate Cause—Instructions—Law*
*of the Road.*

Where, on a motion by appellant for a new trial, the appellee, with knowledge that the bills of exceptions had not been signed within the statutory time, requested the trial court to require the appellant to elect whether to have her exceptions heard by that court or by the appellate court, and the appellant accordingly elected that certain exceptions should be preserved for the appellate court, and that other exceptions should be waived for the purpose of that court, and, the trial court having confirmed such election, only the rulings involved in the latter exceptions were discussed by counsel and considered by the trial court on the motion for a new trial, the delay in signing was waived as to the other exceptions.                    pp. 326-328

On an issue as to the condition of the steering gear of the car in which plaintiff was riding at the time of the accident, evidence of such condition after the accident was admissible, there being evidence that the condition of the car, when examined by the witnesses after the accident, was the same as it was before the accident.                    p. 328

An affidavit by a juror is inadmissible to impeach a verdict in which he participated.                    p. 328

A prayer going to plaintiff's right to recover concedes the truth of all evidence in the case, together with such inferences as may be naturally and legitimately drawn therefrom, which tends to prove facts not referred to in them, but which nevertheless can have the effect of qualifying or avoiding the effect given to the facts referred to in the prayer as determining the plaintiff's right to recover.                    p. 333

In an action on account of a collision between an automobile in which plaintiff was riding, and defendant's truck, while passing in an opposite direction, it was error to instruct the jury in effect that if the truck was to the right of the center of the highway at the time of the accident, plaintiff was not entitled to recover, regardless of any other facts or circumstances in the case, Acts 1920, ch. 506, sec. 1, sub-sec. 163, requiring all vehicles, when meeting others, to turn to the right of the center of the highway so as to pass without interference, not creating an irrebuttable presumption of negligence against the person guilty of its violation.                          p. 334

Where a violation of a statute or an ordinance is relied upon as creating a cause of action, or by way of defense to an action brought by one violating such statute, and but for the statute the defendant's negligence would have entitled plaintiff to recover, the violation of the statute, to constitute a cause of action or defense, must have been the proximate cause of the accident.                                             pp. 334, 335

That some part of the automobile in which plaintiff was riding projected to the left of the center of the road at the time of the collision would not prevent recovery by her on account of negligence in the management of defendant's truck, it being possible for it to have passed the automobile in perfect safety even though the latter did project slightly to the left of the center of the road.                                       p. 336

One injured, while riding in an automobile, by a collision with a truck moving in the opposite direction, was not guilty of contributory negligence, as a matter of law, because she saw, or by reasonable care could have seen, that the approaching truck was to the left of the center of the road, and failed to warn the driver of the automobile, a capable and experienced man, of that condition, which he must have himself seen, and which might be expected to be changed before the machines met.
                                             pp. 337, 338

The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent; and where the nature and attributes of an act relied on to show negligence, contributing to an injury sustained, can only be determined correctly by con-

sidering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to characterize it as a matter of law.                                    p. 337

An instruction that plaintiff could not recover for her injuries if the collision was due to the defective steering gear of the automobile in which she was riding, and she knew, before the accident, of this defect and that it rendered the automobile unsafe to drive, was erroneous, as ignoring evidence that defendant's truck was so far on plaintiff's side of the road that the automobile was at its extreme right edge, this justifying the inference that the defect in the steering gear would not have caused the accident had the truck been on its own side of the road.                                                          p. 339

Where negligence is relied on as a bar to an action for injuries resulting from an accident, such negligence must have been concurrent, and formed the proximate cause of the injury complained of, for if the negligence of the defendant were the proximate, and that of the party injured the remote, cause of the injury, the action is maintainable, notwithstanding the party injured may not have been entirely without fault.   p. 340

*Decided February 29th, 1924.*

Appeal from the Circuit Court for Caroline County (AD-KINS, C. J., and WICKES, J.).

Action by Evelyn S. Kelly against the Huber Baking Company. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before THOMAS, URNER, OFFUTT, and DIGGES, JJ.

*T. Alan Goldsborough,* with whom were *Henry A. Warbarton, Joshua Clayton,* and *Omar D. Crothers,* on the brief, for the appellant.

*Henry R. Lewis,* with whom were *Fred R. Owens, W. Brewster Deen, William J. Rickards,* and *J. Owen Knotts,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On the 11th day of November, 1920, at about two o'clock in the afternoon, Oswald C. Kelly and Evelyn S. Kelly, his wife, who were on their way from their home at Otega, New York, to Florida, were travelling in a seven-passenger automobile driven by Mr. Kelly, over the state road leading from Newark, Delaware, to Elkton, Maryland, and had reached a point in Maryland about two miles north of Elkton, when they met a truck owned by the Huber Baking Company and driven by one of its employees, which collided with the automobile with sufficient force to overturn it, and after the collision Mrs. Kelly was found in an unconscious condition pinned beneath the automobile. She was at once taken to a hospital in Elkton, where upon an examination it was discovered that she had sustained severe and painful injuries, from which she claims she has never fully recovered.

She claimed that the accident resulted from the negligence of the driver of the truck, and asserted a claim against the Huber Baking Company, his employer, for compensation for the injuries she had suffered. That company denied any liability for the accident, and thereafter, on March 31st, 1922, she filed in the Circuit Court for Cecil County a declaration against it in which she charged that "the automobile in which the plaintiff was riding was run into and struck by an automobile truck of the defendant, due to the negligent handling, running and operating by said defendant, its servants and agents of said truck; that by reason thereof the automobile in which the plaintiff was being driven was turned over, throwing the plaintiff on and against the stone highway with great force, whereby the plaintiff's skull was fractured, her body, arms and legs injured and bruised, said injuries have caused great suffering and pain, and the plaintiff is seriously and permanently injured." The defendant filed the general issue plea to that declaration, and the case was tried before a jury in the Circuit Court for Caroline County, to which it had been removed, and on April 15th, 1922, the jury in the case returned a verdict for the defendant, and on the same day the plaintiff filed a motion for a new trial. On July 9th, 1923,

that motion was overruled and final judgment entered on the verdict, and from that judgment this appeal was taken.

The record contains seven exceptions. The first five relate to rulings upon questions of evidence, the sixth to the court's rulings on the prayers, and the seventh to its action in excluding at the hearing of the motion for a new trial an affidavit of a member of the jury before whom the case was tried, tending to impeach his verdict.

Before taking up those exceptions, however, it will be necessary to consider a motion to dismiss the appeal made in this Court by the appellee. The ground for the motion is that the exceptions were not signed within the time limited by chapter 463, section 49E, Acts 1894, a Public Local Law of Caroline County, which requires all bills of exceptions in any cause pending in the circuit court for that county to be signed within thirty days from the rendition of the verdict of the jury or the finding of the court upon issues of fact, except where the time has been previously extended by order of court, or where the parties agree that they be signed.

Unless the appellee has in some way waived its right to rely upon these provisions of that statute, the motion must prevail, for the record conclusively shows that the exceptions were not signed within thirty days from the day of the verdict, and that the court did not within that period extend the time for signing them, and the question finally comes to this: Did the appellee waive its right to object to the consideration of the exceptions in this court on the ground that they were not signed in accordance with the terms of the statute referred to?

The facts to be considered in connection with that question are not disputed, and are as follows: On June 19th, 1922, long after the period of thirty days from the verdict in this case had expired, the court, upon the petition of the appellant, extended the time for signing exceptions to September 1st, 1922. On July 31st of that year the first six exceptions were signed, and the seventh exception, relating to the court's ruling in excluding the affidavit of the juror previously referred to at the hearing of the motion for a new trial, was

signed on July 25th, 1923, within thirty days from that hearing, which occurred on July 9th, 1923.

That exception contains the following statement of what transpired at the hearing of the motion for a new trial:

"At the hearing the plaintiff desired to discuss for the purposes of a new trial the court's rulings as embodied in the first, second, third, fourth, fifth and sixth exceptions in the bills of exceptions. Counsel for the defendants, however, objected to the correctness of the rulings upon which these exceptions were based being discussed by counsel or considered by the court unless these exceptions were waived for the purpose of the Court of Appeals. After argument the court decided that if counsel for the plaintiff desired to discuss these exceptions they would have to be waived; it was then agreed that the third and fifth exceptions should be waived for the purpose of the Court of Appeals, and the first, second, fourth and sixth exceptions be preserved for the purpose of the Court of Appeals, in accordance with which agreement and ruling by the court confirming the agreement the correctness of the rulings embodied in the third and fifth excepitons were discussed by counsel and considered by the court and none others."

After the case reached this Court the judges who presided at the trial below filed in it a certificate, in which they stated

"That the language used in the introduction or preamble to the plaintiff's seventh bill of exceptions, near the bottom of page 163 of the record filed in said case, was understood by us to mean the same as if it had been written as follows: 'The counsel for the plaintiff then elected that the third and fifth exceptions should be waived for the purpose of the Court of Appeals, and the first, second, fourth and sixth exceptions be preserved for the Court of Appeals, in accordance with which election and ruling by the court confirming the election the correctness of the rulings embodied in the third and fifth exceptions were discussed by counsel and considered by the court and none others.' We do further certify that the counsel for

the defendant in no manner entered into or participated in the election aforesaid further than to insist upon the enforcement of the rule requiring such election, and entered into no agreement in relation thereto, the matter being wholly at the discretion and election of the counsel for the plaintiff."

From these statements of the trial court it is obvious that at the hearing of the motion for a new trial, one of the grounds of which was that the court had erred in its "ruling or instructions," counsel for the appellee moved the court to require the appellant to elect whether she would stand upon her exceptions at the hearing or whether she would try them in this Court, and that as a result of its action the trial court required the appellant to elect whether she would have her exceptions heard by the trial court or by this Court, and that because of that ruling for which the appellee had asked she elected to have them heard by this Court instead of by the trial court. In other words, having successfully objected to having the exceptions reviewed by the trial court upon the implied assurance that they could be heard by this Court, and having gotten the full benefit of its action there, the appellee now objects to the consideration of the exceptions in this Court on the ground that they were not taken in time. While it may have been inadvertent and unconscious, nevertheless such conduct is not consistent with those principles of equity and fair dealing which should characterize transactions in courts of justice, and cannot be approved by this Court. At the time it objected to the consideration of these exceptions by the trial court, the appellee knew, or by the exercise of ordinary diligence should have known, that the exceptions were not signed within the time required by the statute, and if it had intended to rely upon that objection in this Court, it should have so informed the trial court when it objected to the consideration of the exceptions as grounds for a new trial, for certainly that court would not have required the appellant to elect whether she would try her exceptions before it on that motion, or in this Court, had it been advised

that they were invalid, and that appellee would object to their consideration in this Court for that reason. For these reasons, in our opinion, the appellee, by its counsel, waived its right to object to the consideration of the first, second, fourth and sixth exceptions in this Court, and the motion to dismiss the appeal must be overruled. *Mitchell* v. *Slye,* 137 Md. 88; *Williams* v. *United States Fid. Co.,* 105 Md. 503; *Thomas* v. *Ford,* 63 Md. 346.

Of the seven exceptions contained in the record six may be disposed of with brief comment. The third and fifth were expressly waived in the lower court. The first and second relate to the admission of the testimony of two witnesses who had made an actual physical examination of the wrecked automobile as to the condition of the steering gear. There was testimony in the case that, when they examined it, the machine was in the same condition in which the accident left it. The defendant's theory of the accident was that it was occasioned by the erratic course of the plaintiff's automobile due to the condition of its steering gear. The evidence was, therefore, relevant and properly admitted. The fourth exception, because of its obscure and contradictory reference to the court's ruling, presents no question which we can review, but it is difficult to conceive of an answer with fewer possibilities for harm than that to which it relates.

At the hearing of the motion for a new trial the plaintiff offered in evidence the affidavit of James E. Todd, one of the jurors who tried the case, to the effect that during the trial he had been approached by a certain Davis, the brother-in-law of one of the attorneys for the defendant, who told him that there was "not much to" George R. Fabian, the principal witness for the plaintiff, and that the foreman of the jury stated to them when they retired to make up their verdict that he had heard that the witness was a "crook."

In that affidavit Todd attempted to impeach his own verdict. For that purpose it was clearly inadmissible. *Brinsfield* v. *Howeth,* 110 Md. 530. And while the facts which it embodies, if true, would be sufficient to warrant appro-

priate proceedings to punish the persons who attempted to discredit the administration of justice by improperly influencing the verdict of the jury (20 *C. J.* 495, etc.), under no circumstances could the affidavit be considered for the purpose for which it was offered at the hearing of the motion for a new trial.

The sixth and only remaining exception relates to the ruling of the trial court on the prayers. The defendant offered seven prayers, of which the court granted the first, second, third, fourth and fifth. The first and third prayers state general principles of law applicable to the facts of the case in a form which has been repeatedly approved by this Court, and were properly granted. There was, however, in our judgment, error in granting the defendant's second, fourth and fifth prayers. In order to correctly estimate the significance and effect of these instructions it will be necessary to refer briefly to so much of the evidence in the case as is material to the plaintiff's right to recover.

Oswald C. Kelly, who was driving the automobile, testified that he had just driven it around a curve in the road when he saw the truck, which at that time was "kinda hogging the road," and to quote from his testimony: "I didn't like the looks of him very much when I saw him coming up the road, and I slowed down and pulled two wheels off on the dirt; off of the macadam over on the dirt. He didn't seem to turn out any and I pulled further over. As I got within about 200 feet of him I was over as far as I could travel in the ditch, and I had room then, I thought, to get past. * * * I was over as far as I could drive in the ditch with safety to the telephone pole. * * * All at once I noticed him come to the side of the car like that (illustrating). The next thing I knew the car turned around in the road; turned over, and here we were. * * * It struck the car where I sat on the front end of the running board. * * * What part of the truck struck your car? A. The wheel was the only part that could strike it. Q. Which wheel? A. The left front wheel. * * * When the front wheel struck my car it took the run-

ning board and rear fender; straightened out the rear fen-
der; took the running board and side pan and brackets, and
took the rear axle behind the car.   Some part of the truck
went under the car and jammed the muffler.   After the car
turned over the truck went under and jammed the muffler,
and the car swung around in the road and turned on its right
side.   Q. What became of the truck?   A. The truck con-
tinued the course it was going to a stone pile about forty
feet from where he struck me."

George R. Fabian, a salesman, was driving a Ford coupe
behind the truck at the time of the accident.   He testified
he had not passed it because he did not have room, and that
"it was taking up too much of the road.   This truck was not
running straight.   I was afraid to take a chance and as long
as I had but a short distance to go I thought I would stay
behind rather than take a chance.   Q. When you say it was
not running straight, what do you mean?   A. Well, kinda
wabbling as if it had a bad steering gear."   The witness fur-
ther testified that when he saw Kelly's automobile come
around the curve he anticipated from the position of the
truck in the road that something might happen and he pulled
over to the left so that he could see better, and further testi-
fying he said:   "A. I saw the automobile coming around
the bend, I imagine he was running twenty or twenty-five
miles an hour.   He couldn't go very fast because there is a
very sharp turn there; he couldn't go faster than that.   I
believe Kelly would have passed him all right, but as he got
opposite him he ran right smack into him.   Q. Who did?
A. The truck, and then he ran about forty feet into a stone
pile and the wheel broke off."   He also said that the truck
was in the middle of the road and travelling at about twenty
or twenty-five miles an hour.

L. H. Rothwell, an employee of the State Roads Commis-
sion, testified that the roadway at the point where the acci-
dent happened is twenty-four feet wide, of which there is a
cement portion fourteen feet wide, and on either side of that
a dirt "shoulder" five feet wide.

Paul Miller and Stephen Kline arrived on a truck shortly after the accident, and they testified as to the relative locations of the automobile and the truck when they arrived, corroborating Kelly and Fabian.

William O. Hudson, on behalf of the defendant, gave this description of the accident: "I was driving on the Elkton Pike going towards Newark in a Pierce Arrow truck between one and one-thirty in the afternoon. The truck was empty save a few bread boxes, as I served the route and was returning home. When I got about half way, I would say, between the little church and the school house, I noticed a touring car on the road coming in the opposite direction. This touring car was coming towards Elkton and I was going towards Newark and as I got to the school house this touring car met me at the school house. I was going down on the right-hand side of the pike, and the touring car was coming towards Elkton, and just at this point the touring car ran into the front wheel of my truck and took the rim, as we term it, off of the truck wheel and turned the truck crosswise of the road, taking the steering gear wheel out of my hand completely, and for a moment paralyzing my hand so to speak. I had no control of the machine. She turned crosswise of the road, as the wheel was broken down. I didn't have any wheel to control it, but as soon as possible, which was only an instance or two I reached down and grabbed the emergency brake and stopped the machine, which ran to the left side of the center of the road at a stone pile near a telephone. She didn't touch the telephone pole or any part of it, but stopped at the stone pile. * * * When I first saw the Kelly car she seemed to round the turn. When she rounded the turn she came over into what would be my right side of the road, as a good many cars do in making a turn. Q. How fast, in your judgment, was the Kelly car travelling when you saw it? A. In my judgment she was traveling thirty-five miles an hour or more; nothing less than thirty-five miles per hour." After the accident, he said, he went to the automobile under which Mrs. Kelly lay, and to

quote further from his testimony: "When I came around his wife was lying on the flat of her back in the road. Just as I came around he leaned over his wife like and called her by name. Evelyn, I think. Is that correct? He said, 'Evelyn, Evelyn speak.' Evelyn didn't speak. He looked up at me and said, 'What is the matter with you? What are you turning across the road and running into me for?' I said, man, what is the matter with you? You had clearance on the road but didn't use it; the thing to do now is to get the lady to the hospital and never mind the car. That is about all the conversation there was between us."

Dr. William T. Morrison, who saw the truck soon after the accident, said in part: "The head of the truck was up the road towards Newark; I mean the front of the truck was more towards Newark than the rear. The truck was against the bank where there was a stone pile. The bumper was embedded in the stones. The left front wheel was very badly broken."

Harry Jones and Lleyellyn L. Sherwood, both of whom were familiar with the truck driven by Hudson, testified that it could not be driven faster than fourteen miles an hour because it was controlled by an automatic sealed device called a governor, which prevented it being driven at a greater speed.

Joe Stevens, a farm laborer, who was husking corn in a field nearby, also witnessed the accident. He appeared to have been about fifty yards away from the machines when the accident occurred. He was "standing behind a pile of corn husks eating dinner facing the road." He testified that the truck was on the right-hand side of the road when the accident occurred, proceeding "leisurely" along, but that the automobile was being driven "very fast."

John R. Cochran and Robert Lee Hodges, two automobile experts, examined the automobile in 1921 at the request of the insurance company. It had not been repaired since the accident and, at the time they examined it, they found that it had four or five inches "play" in the steering wheel, and

they testified that that condition made it unsafe to drive. In rebuttal Taylor McKenney, in whose garage the automobile was stored, testified that the two automobile experts had made only a cursory examination of it and that he had himself examined the steering gear and had found in it only the amount of "play" that is usual and necessary, not over an inch.

This in substance is the testimony material to the consideration of the question before us, and it was in connection with that testimony that the prayers to which we will now refer were granted.

By the defendant's second prayer the jury were instructed: "That if they shall find that immediately prior to and at the time of the happening of the accident in this case defendant's truck was to the right of the center of the highway then the verdict of the jury must be for the defendant." By its fourth prayer they were instructed: "Even if they shall find that some part of the defendant's truck extended beyond the center of the road, still if they shall further find that the plaintiff saw, or by the exercise of reasonable care might have seen that said truck did so extend beyond the center of the road, and that plaintiff by the exercise of reasonable care, might have warned her husband in time to have enabled him by the exercise of reasonable care to avoid the accident and failed to give such warning, then the verdict of the jury must be for the defendant." Both of these prayers go to the right of the plaintiff to recover, and therefore they concede the truth of all evidence in the case, together with such inferences as may be naturally and legitimately drawn therefrom, which tends to prove facts not referred to in them but which nevertheless can have the effect of qualifying or avoiding the effect given to the facts referred to in the prayers, as determining the plaintiff's right to recover.

Taken together they instruct the jury that, if the defendant's truck at the time the accident occurred was to the right of the center of the highway, the plaintiff could not recover, while if it was at that time to the left of the center of the

highway she could not recover either, if by reasonable care she could have seen its position in time to have warned her husband who was driving the car of its position in time to enable him by the exercise of reasonable care to avoid the accident and failed to do so. That in our judgment is not a correct statement of the law applicable to the facts of this case.

The first proposition is apparently predicated upon that provision of sub-section 163, section 1, chapter 506 of the Acts of 1920, which provides: "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State, upon meeting others, shall turn to the right of the center of the highway so as to pass without interference." And it assumes that any violation of that statute creates an irrebuttable presumption of negligence against the person guilty of the violation, for by it the jury were told that if they found that at the time of the accident the truck was to the right of the center of the highway, then the plaintiff was not entitled to recover, regardless of any other facts or circumstances in the case.

While it has been generally held that a violation of such a statute may create a *prima facie* presumption of negligence, it has never been held in this State to be negligence *per se*.

But, on the other hand, it has been uniformly held in this Court that where a violation of a statute or an ordinance is relied upon as creating a cause of action, or by way of defense to an action brought by one violating such statute, where but for the statute the defendant's negligence would have entitled the plaintiff to recover, that the violation of the statute relied upon either as a cause of action or a defense, to constitute either, must have been the proximate cause of the accident. In *Gittings* v. *Schenuit,* 122 Md. 285, CHIEF JUDGE BOYD, speaking for the Court, in discussing the effect of the violation of that part of the motor vehicle law regulating the use of lights on automobiles, said: "The attorney for the appellee, who has shown commendable zeal and industry, as well as ability, in the preparation of his brief, has

cited a number of authorities to show that the violation of the statute by his client did not prevent a recovery by him un-'ess it was the proximate cause of the injury. Amongst others he cited *Babbitt on Law of Motor Vehicles,* sec. 952; *Bourne* v. *Whitman,* 209 Mass. 155; *Belleveau* v. *Lowe Supply Co.,* 200 Mass. 237; and also some of our own decisions to the effect that the mere violation of an ordinance or statute by a defendant will not of itself support an action for injuries sustained, but that it must be shown that the act which constituted the breach of the ordinance or statute was the proximate cause of the accident. *B. & O. R. R. Co.* v. *State, use of Miller,* 29 Md. 252; *McMahon's case,* 39 Md. 438; *McDonnell's case,* 43 Md. 534; *Reidel* v. *P., W. & B. R. R. Co.,* 87 Md. 153, and also section 144 of article 56." And in *Chiswell* v. *Nichols,* 137 Md. 307, this Court, through JUDGE PATTISON, in disapproving a prayer embodying the same principles as that under consideration, said: "By the plaintiff's third prayer the court was asked to direct the jury to find a verdict for the plaintiff if they found the defendant had not complied with certain traffic rules or regulations provided by the statute. This, we think, was not a proper prayer to be granted in the case, as the jury was not permitted to consider the facts and circumstances under which he failed to comply with the statute, if he so failed, but they were told, without regard to any of the facts of the case, that if they found that he had not complied with such rules and regulations, their verdict should be for the plaintiff." See also *Hopper, McGaw & Co.* v. *Kelly, ante* p. 161. And that conclusion is, we think, so far as it applies to "rules of the road," consistent not only with our own decisions, but with the general weight of authority. Referring to the so-called "law of the road," in *Huddy on Automobiles,* Ch. 297, the author, after stating that the weight of authority regards the violation of statutes regulating the use of highways as negligence *per se,* says: "The distinction between mere 'evidence of negligence' and 'negligence *per se*' is very marked, in that in the former there must be an adjudication as to

whether or not the violation constitutes negligence, whereas in the latter negligence necessarily follows the proof of the violation. * * * The rule is different in some jurisdictions where the regulation involved relates to the so-called 'law of the road.' Driving on the wrong side of the road is not so clearly a wrongful act as driving at a prohibited speed, for the circumstances may be such as to excuse a violation of the law of the road. Hence the violation is generally said to be *prima facie* negligence, and the violator of the rule is given an opportunity to rebut the inference of negligence arising against him."

Aside from the statute, it is clear that the mere fact that some part of the automobile in which the plaintiff was driving projected to the left of the center of the road did not have the effect given to it by the prayer under consideration. As was said in *Buxton* v. *Ainsworth,* 138 Mich. 536, 5 Ann. Cas. 146: "As an abstract proposition, the driver of a vehicle about to meet another team is presumptively at fault if he fails to turn to the right of the centre of the wrought portion of the highway; but if the presumption that he is thus at fault is overcome by the evidence of circumstances, or if it appears that the fault, if found, did not essentially contribute to the injury, the fact that he may have been in a sense out of place does not place him beyond the protection of the law. *Spofford* v. *Harlow,* 3 Allen (Mass.) 176. If, although some portion of the plaintiff's carriage was to the left of the centre portion of the travelled way, the presence of the carriage at that point in no way interfered with the passage by defendant pursuing precisely the course he was in, it is difficult to see how the fault of plaintiff in any legal way contributed to the injury so that recovery is to be denied him for an act of defendant negligent in itself."

The evidence in this case is that the road at the point where the accident occurred is twenty-four feet wide, and that the defandant's truck was seven and a half feet wide, so that it was perfectly possible for the driver of it to have met and passed the plaintiff's automobile in perfect safety even if it had projected slightly to the left of the center of the road,

and yet, under that instruction, even though the accident may have been caused by the grossest or even wanton negligence of the driver of the defendant's truck, such as swerving suddenly into the plaintiff's car, as testified to by her witnesses, the plaintiff could not recover if at the time of the accident the automobile over which she had no control projected to the slightest extent to the left of the centre of the road.

The defendant's fourth prayer rests upon the proposition that the plaintiff was guilty as a matter of law of contributory negligence if she saw, or by reasonable care could have seen, that the truck was to the left of the center of the highway and failed to warn her husband, who was driving the automobile, of that condition in time to have enabled him by the exercise of reasonable care to have avoided the accident. No authority in support of that proposition was cited by the appellant, and we have been able to discover none. The rules of law which allow courts to determine the existence of contributory negligence as a matter of law have been so often and so clearly stated, and are so well settled, that anything more than a reference to some of the recent cases in which they have been discussed is unnecessary, and from them this general principle has been deduced, that is, "that the act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence, contributing to an injury sustained, can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its value as a matter of law. *Balto. & O. R. Co.* v. *Hendricks,* 104 Md. 79; *McCarthy* v. *Clark,* 115 Md. 468; *Nat. Life Ins. Co.* v. *Fleming,* 127 Md. 185; *Baker* v. *Md. Coal Co.,* 84 Md. 27; *Waltring* v *James,* 136 Md. 407." *Riley* v. *State,* 140 Md. 143; *Rosenthal* v. *Durkin,* 142 Md. 20; *Brown* v. *Patterson,* 141 Md. 292. Applying that rule to the fact which the trial court characterized as negligence

*per se,* we cannot attribute to it any such conclusive effect.
Assuming that Mrs. Kelly did see that the truck was on the
wrong side of the road, it did not necessarily follow that she
was negligent because she did not call her husband's atten-
tion to that fact. He was in full possession of his faculties;
he, too, as he was driving along a straight road towards the
truck, must have seen it, and he was an experienced driver
who had for fifteen years driven automobiles without an ac-
cident. Certainly under such circumstances we cannot re-
gard the failure of Mrs. Kelly to call her husband's atten-
tion to what must have been as apparent to him as to her, the
fact that a truck was approaching which was partly on the
wrong side of the road, as such a "prominent and decisive"
act of negligence that no room would be left for ordinary
minds to differ in so characterizing it. On the other hand,
even if she had seen that the truck was on the wrong side of
the road, she was not bound to assume that it would remain
there, but she was rather entitled to assume that it would
return to its own side of the road before the two machines
met, for, as was said in *Brown* v. *Patterson,* 141 Md. 302,
*supra,* "When a law prohibits an automobile from going in
a certain direction on a street or highway, or from going be-
yond the center line of that street or highway, persons using
the street or other highway are not required to be constantly
anticipating a violation of such law, and have the right to
assume that it will not be violated, although, of course, they
must use due care according to the circumstances." And to
the same effect is *Huddy on Automobiles,* page 432, in which
that rule is thus stated: "A traveler on a public street or
highway has the right to assume that other travelers will ob-
serve the law of the road, obey all regulations relative to the
use of the highway, and in general exercise reasonable care
to avoid injury to their fellow travelers. He may rely on
this assumption until he discovers that it is contrary to the
actual fact." Whether the failure of Mrs. Kelly to warn her
husband of the position of the truck under the circumstances
of this case was any evidence of negligence is not before us,
but that it was not negligence as a matter of law cannot in

our opinion be questioned, and for that reason the defendant's fourth prayer should have been refused.

By the defendant's fifth prayer the jury were instructed that: "If they shall find that the collision between the Kelly automobile and the defendant's truck was due to the defective steering gear of the Kelly automobile, if the jury shall so find, and if the jury shall further find that the plaintiff prior to the collision had operated the Kelly car and knew of such defect and knew that it rendered the Kelly automobile unsafe to drive, if the jury so find, then the verdict of the jury must be for the defendant." By that prayer the jury were told that if the accident was due to the defective steering gear of the Kelly automobile and that the plaintiff prior to the collision knew of the defect and that it rendered the automobile unsafe to drive that she could not recover, that is, it characterized her act in riding in an automobile with a defective steering gear, under the circumstances referred to in the prayer, as such negligence as would prevent her from recovering for an accident due to that defect against another whose negligence may have also contributed to it. For while it predicates its denial of the plaintiff's right to recover upon the fact that the collision was due to the defective steering gear, it ignores that part of the evidence which tends to prove that when the accident occurred the defendant's truck was so far on the plaintiff's side of the road that the automobile in which she was riding was almost at its extreme right-hand edge, and while the accident may have actually resulted from a defect in the steering gear under these conditions, it may be inferred from the evidence that it would not have happened at all if the defendant's truck had remained on its side of the road, and therefore the proximate cause of the accident may have been the position of the defendant's truck, and while it may be true that the collision would not have occurred had the steering gear of the automobile been perfect, it is also true that that defect, if it existed in the steering gear of the automobile, would not have caused the accident if defendant's truck had been on its own side of the

road.  To characterize the conduct of the plaintiff in riding
in such a machine as negligence *per se,* under such circum-
stances, is to lay down too severe a standard, when it is con-
sidered that that very machine had been driven from Otega,
New York, to Marylyand through all kinds of traffic condi-
tions without accident, for where negligence is relied upon
as a bar to an action for injuries resulting from an accident,
such negligence, to quote from the syllabus in *North. Cent.
Ry. Co.* v. *State, use of Price,* 29 Md. 421, "must have been
concurrent, and formed the proximate cause of the injury
complained of, for if the negligence of the defendant were
the *proximate,* and that of the party injured the *remote,*
cause of the injury, the action is maintainable, notwithstand-
ing the party injured may not have been entirely without
fault."  For this reason there was in our opinion error in
granting this prayer.

It follows from what we have said that because of the
errors committed in granting the defendant's second, fourth
and fifth prayers the judgment appealed from must be re-
versed.

*Judgment reversed with costs to the appellant,
and case remanded for a new trial.*