EVELYN FRIEDMAN *v.* HENDLER CREAMERY
COMPANY.

[No. 42, October Term, 1929.]

132

*Decided January 8th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and PARKE, JJ.

*Burdette B. Webster* and *Michael J. Manley,* with whom was *Charles F. Harley* on the brief, for the appellant.

*Leonard A. Weinberg* and *Howard A. Sweeten,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Albemarle Street, running north, intersects and stops at Baltimore Street, running east and west, in Baltimore City. Both are heavily traveled public highways. Baltimore Street is forty feet wide from curb to curb with a twelve foot pavement on either side. Albemarle Street is twenty-three and a half feet wide with eight and one-half foot pavements. At half past three o'clock in the afternoon, on Saturday, July 14th, 1928, Mrs. Evelyn Friedman, driving a Chrysler sedan automobile east on Baltimore Street, reached Albemarle Street at the same time that a ton and a half delivery truck owned by the Hendler Creamery Company, Incorporated, and operated by one Samuel Schwartz, its employee, proceeding north on Albemarle Street, reached Baltimore Street, and the two machines collided. As a result of the collision, Mrs. Friedman was seriously injured, and, on October 3rd, 1928, she brought an action of trespass on the case against the appellee to recover compensation for her injuries, on the theory that the collision was caused by the negligent operation of its truck by its employee. The defendant pleaded the general issue, and the case in due course was tried in the Court of Common Pleas of Baltimore City before the court and a jury. The trial resulted in a verdict and judgment for the defendant, and from that judgment the plaintiff has taken this appeal.

At the conclusion of the whole case the plaintiff offered two prayers, which were granted, and the defendant eleven, of which the first three were refused and the others granted, and these rulings are the subject of the single exception submitted by the record.

The appellant's contention is: (1) That there was in the case evidence from which the jury could have found that immediately before and at the time of the collision defendant's truck was on the left of the center line of Albemarle Street continued to intersect the center line of Baltimore Street; (2) that in placing it in that position the driver of the truck violated certain ordinances of the Mayor and City Council of Baltimore, known as sections 25 and 30,

Baltimore City Code, and art. 56, sec. 209 of the Public General Laws of Maryland, which provide that vehicles turning left from one street or highway into another shall keep to the right of the intersection of the center lines of the two highways; (3) that if the truck had been where under the law it should have been, that appellant could have stopped her automobile before it reached it; (4) that therefore the unlawful position of the truck was the direct and proximate cause of the accident; and (5) that appellee's granted prayers ignored the evidence supporting that theory. Appellant's reply to that contention appears to be, first, that there was no evidence in the case to support it, or, conceding that there was, that the question was fairly submitted to the jury by its prayers, and that, in any event, it was "doubtful" if appellant's contributory negligence did not bar her right to recover.

Before considering the merits of these conflicting theories and the prayers to which they relate, it will be useful to review the evidence relating to them.

On behalf of the plaintiff, the first witness offered was Philip G. Jacobs, who testified that he was in the automobile repair business at 805-7-9 Plowman Street, which crosses Albemarle Street from one hundred to one hundred and twenty feet south of Baltimore Street, and that immediately before the accident he was standing at the southwest corner of Plowman and Albemarle Streets near a truck on which he had been working, when defendant's truck, proceeding north on the left or west side of Albemarle Street, travelling at an "average rate of speed," passed him, that he happened to be looking toward Baltimore Street, and watched the truck as it approached that street, and as it did it turned its wheels to make a left-hand turn into Baltimore Street, and the "front wheel had practically passed the building line, the rear of the truck was still with the line of Albemarle Street, when a Chrysler crashed into it"; that at the time of the impact the Chrysler had "pulled as though to come south on Albemarle Street and, not having sufficient room in between the curb and the truck, the crash resulted therefrom"; that

the collision occurred approximately between four and five feet from the southwest corner of Albemarle and Baltimore Streets, and that when he reached the scene a few minutes later he found the left front end of the Chrysler "jammed under the left side of the truck" in such a manner that it was impossible to remove it "without some leverage"; that the body of the truck was unusually high, so high that it was "sufficient for the Chrysler car to have run under the outside edge of the truck without touching any part of the hood; that there were no cars parked on the east side of Albemarle Street, between Plowman and Baltimore Streets, and the only car parked on the west side in that block was about twenty feet north of Plowman Street. On cross-examination the witness said: "The building line on Albemarle Street south of Baltimore projects beyond the northwest corner, there is an offset at the corner, and the truck, in order to come up Plowman Street and stay on the right-hand side of the street, would have to turn at this point (indicating), but the trucks usually come up on the left-hand side of the street"; that the truck was struck approximately in the center, and that the impact of the collision was "terrible"; that the entire left tire of the Chrysler was under the truck, and that the chassis stopped it from going any further.

Following that testimony, the street measurements to which we have referred were admitted, and then Morris Rottman, also an eye witness, was called. He said that at the time of the collision he was standing on the northeast corner of Baltimore Street "across Albemarle Street"; that he saw the truck "coming down on the left hand side of Albemarle Street, and that when it approached Baltimore Street it made a short cut to go west on Baltimore Street; that, instead of going to the right, he started to make a short cut to his left; that the truck must have been about four or four and a half feet away from the southwest curb of Baltimore and Albemarle Streets as it was making the turn". On cross-examination he testified that Albemarle Street stops at Baltimore Street, and that he was standing on what would be the north-

west corner of Baltimore and Albemarle Street if it were continued across Baltimore Street.

The plaintiff then offered in evidence sections 25 and 30 of Article 4 of the Baltimore City Code (1927), as follows:

Ord. 139 (1908-09), sec. 1. "25. Vehicles keeping to the right. Vehicles shall keep to the right of the center of all streets."

Ord. 139 (1908-09), sec. 6. "30. Turning to the left into another street. A vehicle turning to the left into another street shall pass to the right of and beyond the centre of the street intersection before turning."

Following the introduction of that evidence, Evelyn Friedman, the plaintiff, was sworn, and testified that, at about three o'clock in the afternoon, on Saturday, July 9th, 1928, she was driving her husband's Chrysler sedan east on Baltimore Street, that the left side of the car was "straddling the southernmost car track," and that as she approached Albemarle Street she sounded the horn, but heard no other horn; that just before she reached the corner the appellee's truck "darted out of Albemarle Street"; that it seemed "to come into view almost at once," and she attempted to turn right into Albemarle Street, but that it was so far over on the left side of that street that no room was left for the turn, and "there was nothing to do but go into him," and the truck wedged her car between its front and left wheels; that her automobile had got perhaps a foot into Albemarle Street when the collision occurred, and was about three or four feet from that street when she first saw it. She further testified that she had been driving an automobile for nine and a half years, and on cross-examination said that she knew that Albemarle Street was a dangerous street, and when she passes it she sounds her horn; that at least once a week she drives east on Baltimore Street approaching Albemarle, and that when cars are parked along the south side of Baltimore Street it is practically impossible to see anybody coming out of Albemarle Street until you almost reach the corner; that "she was driving slowly, maybe about twelve or fourteen

miles an hour; it was a nice afternoon; clear, dry; brakes were in good condition; hydraulic, four wheel brakes; at a speed of twelve to fourteen miles an hour on a level, it would take three feet, three or four feet, in which to stop; that she did put her foot on the brake, but it didn't help; she attempted to turn into Albemarle Street and, when she saw that she couldn't get in there, she put her foot on the brake, but it was too late; if he had not turned, she does not think there would have been any contact, there wouldn't have been any impact, because, as he turned, he wedged her into it; that, as she saw it at that time, the wisest thing to do was to try to avoid him by going into Albemarle Street; that she put her foot on the brake and tried to turn at the same time"; that she did not stop her car before it hit the truck because the truck was so far over to the left that it did not give her enough room, that when the truck "got out" into Baltimore Street it was only three feet from the west curb of Albemarle Street; that when she first saw the truck she was perhaps two or three feet west of the west building line of Albemarle Street; that she could have turned into Albemarle Street had the truck not been so far over on the left side of that street; and that her automobile struck the truck at an angle because it was making a curve.

Samuel A. Friedman, plaintiff's husband, was in the automobile with her at the time of the accident. He testified that, as they approached the corner of Albemarle Street, his wife sounded the horn, and the "first thing they saw was a yellow truck dodged right out of the corner and cut them off; that it took them so suddenly, didn't give them any room at all to stop or anything else"; that Mrs. Friedman immediately "jammed on her brakes and clutch at the same time, and she tried to turn; that he saw him and he was still moving and turning at the same time, and he saw the truck coming and he ducked, and that is when the crash came, and at the same time the truck was moving still making the turn to go west on Baltimore Street, and at that time the truck was wedging the front of the Chrysler"; that the truck went

138

several feet after the collision; that when the truck came out of Albemarle Street it was on the left; "it cut that corner absolutely".

In the course of his further examination, the witness gave this testimony: "Did he come up this way (indicating) ? A. Had he done that, nothing would have happened. Q. Why not ? A. She could have stopped. She could have turned into Albemarle Street. Q. You mean, by the time she had gotten out beyond the curb line about a few feet into Albemarle Street she would have been stopped ? A. She would have stopped before we reached the center of Albemarle Street, because we weren't going that fast." On cross-examination he said that they had been travelling at the rate of from twelve to fifteen miles an hour, but, as they approached Albemarle Street, his wife "slowed up," and reduced the speed of the car to eight or ten miles an hour; that even at that rate you can't stop a car in two or three feet; that there was no car parked on the south side of Baltimore Street in front of a store located at the southwest corner of Baltimore and Albemarle Streets; that the right front wheel of the truck was in one of the car tracks on Baltimore Street, but the "other wheel" had not reached them. His examination on that point was apparently conducted with reference to some chart or diagram not in the record, and for that reason it fails to show whether he referred to the east or west bound tracks.

On behalf of the defendant, Joseph Mankowicz, who at the time of the accident conducted the store located at the corner of Baltimore and Albemarle Streets, testified that, when the accident occurred, he and one Harry Rifkin, a justice of the peace, were sitting on Albemarle Street near the entrance to his store, which has a sort of "catercorner" entrance, and that Rifkin's automobile was parked on Albemarle Street in "front of the side of the store"; that he saw the truck go north on Albemarle Street, that it wasn't going so fast, and was travelling along the center of the street; that the truck had got to the first track going east, "and the front

part of wheels was close to the second track going west." Rifkin corroborated Mankowicz, but added that there were cars parked on Baltimore Street on the north and south sides and in front of Mankowicz's store, and that on the east side of Albemarle Street "there was one machine fifteen or twenty feet south of Baltimore Street."

Samuel Schwartz, the truck driver, after stating that, approaching Baltimore Street over Albemarle, he drove in the center of the street, said: "When I got to Baltimore Street, right at the building line, I slowed down, glanced to my left, saw Mrs. ———. I saw this car coming, the Chrysler car, at about Front Street, and then continuing on, and when I got about in the center of the track I looked to my right and saw everything clear and proceeded across. At that time I happened to glance around and saw the Chrysler coming head-on to me. I placed my foot on the brake and stopped just where I was, before she struck the truck." He further testified that, when his truck came to a stop, its front bumper was on the west bound track of the car tracks on Baltimore Street and it blocked traffic east and west. On cross-examination he said, "as he got to the building line on Baltimore Street he could see Mrs. Friedman's car; it was then above Front Street, which is about a hundred and fifty feet away, * * * that while Mrs. Friedman was going that distance, he went from the building line into the westbound track, which he would judge would be about ten feet; that he put his foot on the brake and stopped when he noticed it was impossible to keep on and get out of her way, no other way but have the accident, because she was within such a distance that he couldn't go any farther; that from the time he put his foot on the brake to stop, he went about eight or ten inches before the truck stopped; that at the time he came out of Albemarle Street he was going around six or eight miles an hour; that owing to the fact that there were cars parked on Baltimore Street, he could not make the correct turn into Baltimore Street without striking those cars on the other side, or pulling up and backing out two or three times, to make a correct turn there."

In considering this evidence in connection with such of defendant's prayers as challenge its legal sufficiency to establish any fact upon which plaintiff's right to recover rests, it will be presumed that, in so far as it tends to prove such fact, it, together with such inference as may naturally and legitimately be drawn from it, are true (*Griffith v. Bensinger,* 144 Md. 599), even though such fact is not referred to in the prayer under consideration. *Kelly v. Huber Baking Powder Co.,* 145 Md. 333. And it must also be remembered that any prayer denying the plaintiff's right to recover upon the finding of a segregated group of facts is bad, if there are in the case other facts not included in that group which may properly and validly be given the effect of qualifying or destroying the conclusion stated in the prayer. *Kelly v. Huber Baking Co., supra.* For, as was said in *Hart v. Leitch,* 124 Md. 82: "Where a prayer instructs the jury that the plaintiff is entitled to recover if certain facts are found to exist, its effect is to withdraw from the consideration of the jury all facts other than those specified, and the rule is that the prayer is erroneous if the facts which it excludes admit of a conclusion different from the one to which it is directed. *Dolby v. Laramore,* 121 Md. 624; *Singer Co. v. Lee,* 105 Md. 663; *Corbett v. Wolford,* 84 Md. 426."

The only prayers which appellant especially asked this court to review are defendant's seventh, seventh and a half, and eighth prayers, and while it excepted to the action of the court in granting defendant's fourth, fifth, sixth, ninth, tenth, and eleventh prayers, the objection was not pressed in this court, and they will not be considered, further than to say that they appear to be free from error.

The defendant's seventh prayer instructed the jury that if they found that defendant's employee was operating its truck north on Albemarle Street, approaching Baltimore Street, and the plaintiff was operating an automobile east on Baltimore Street, that it became the duty of the plaintiff to give the right of way to the defendant's truck, and that if they further found "that the plaintiff undertook to proceed east on Baltimore Street, before allowing the defendant's au-

tomobile truck to pass, then the plaintiff cannot recover for her injuries occasioned by the collision referred to in the evidence, unless the jury shall further find that the chauffeur operating the defendant's truck could, by the exercise of ordinary care, have avoided said collision, after he saw, or, by the exercise of ordinary care, might have seen, the plaintiff's automobile in a position of danger." Under the evidence in the case the doctrine of "last clear chance" invoked by the prayer was meaningless, since there was no evidence of any kind to support it, and in considering the prayer so much of it as dealt with that hypothesis may be disregarded, because it cannot affect, one way or another, the proposition that the failure of the plaintiff to give to the defendant the right of way, in itself, without regard to any other fact or circumstance in the case, barred her right to recover. If the testimony tending to support the plaintiff's claim was true, the driver of the truck was not in a position at any time to have seen the automobile which she was driving in time to have avoided the collision, while, if what the truck driver said was true, she had an unobstructed view of his truck for about one hundred and fifty feet, but nevertheless drove into it. The truck driver could not reasonably have been required to anticipate that the plaintiff on a bright clear afternoon would drive her automobile into a truck in full view crossing the street directly in front of her and coming from her right, when she had one hundred and fifty feet in which to stop her car. In neither instance could the doctrine of "last clear chance" have any possible application.

In effect the prayer declares that, if two motor vehicles are approaching over public highways the same intersection, without any reference to the speed or relative position of either, the vehicle approaching from the right is entitled to the right of way, and if the vehicle approaching from the left fails to give that right, the person operating it is responsible for any ensuing collision between the two vehicles, even though the direct and proximate cause of the collision was the negligent operation of the vehicle approaching from the right. That proposition finds no support either in law or rea-

son. It is certainly not supported by anything contained in the Motor Vehicle Law of this State, or the ordinances of the Mayor and City Council of Baltimore, and it is in conflict with the decisions of this court. Code, art. 56, sec. 209, provides that: "At the intersection of public highways all vehicles shall keep to the right of the center of such highways, and close to the right-hand side of the road when turning to the right, and pass to the right of the center of such intersection when turning to the left. Slow moving vehicles, including motor trucks, shall at all times keep as close to the right-hand side of the highway as practicable, regard being had to the width and construction of such highway. * * * All vehicles shall have the right of way over other vehicles approaching at intersecting roads from the left, and shall give right of way to those approaching from the right. * * * Any person operating any vehicle in a manner contrary to any of the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction subject to a fine of not less than five dollars ($5.00) nor more than fifty dollars ($50.00) for the first offense."

The purpose of the statute was to regulate the use of public highways by vehicles passing over them, by prescribing certain rules designed to insure the safety of all persons in the lawful use thereof, and by punishing any violation of such rules, but it contains nothing which can support the inference that it was intended to create a cause of action in a civil proceeding, inuring to a traveller on such highways against another violating those rules, unless such violation was the direct and proximate cause of any injury to such traveller. In other words the mere violation of the rules prescribed by the section will not constitute actionable negligence, unless it is the direct and proximate cause of injury to the person charging negligence. *Shearman & Redfield, Negligence* (6th Ed.), secs. 13, 27, 467. In *Phila., W. & B. R. Co. v. Stebbing,* 62 Md. 516 *et seq.* in dealing with the proposition that the violation of a city ordinance limiting the speed of trains to ten miles an hour was negligence *per se,* the court said: "This ordinance is general, and is for the protection

of the public generally; but the neglect or disregard of the general duty thereby imposed for the protection of every one, can never become the foundation of a mere personal right of action, until the individual complaining is shown to have been placed in position that gave him particular occasion and right to insist upon the performance of the duty to himself personally. The duty being due to the public, composed of individual persons, each person specially injured by the breach of duty thus imposed becomes entitled to compensation for such injury. But he must have been in a position to entitle him to the protection that the ordinance was designed to afford, and he must show how and under what circumstances the duty arose to him personally, and how it was violated by the negligence of the defendant to his injury. In other words, it must appear that the negligent breach of the duty imposed by the ordinance was the direct and proximate cause of the injury complained of, and that such injury would not have occurred but for the violation of that duty." And the same principle was announced in *McMahon v. North. Cent. R. Co.,* 39 Md. 453; *North. Cent. R. Co. v. State, use of Geis,* 31 Md. 365, and *Reidel v. Phila., W. & B. R. Co.,* 87 Md. 157. Those cases dealt with the operation of trains over railroads, but the reason given for the legal principles declared apply with equal force to the operation of automobiles over public highways, and this court so held in *Chiswell v. Nichols,* 137 Md. 307, where it said: "By the plaintiff's third prayer the court was asked to direct the jury to find a verdict for the plaintiff if they found the defendant had not complied with certain traffic rules or regulations provided by the statute. This, we think, was not a proper prayer to be granted in the case, as the jury was not permitted to consider the facts and circumstances under which he failed to comply with the statute, if he so failed, but they were told, without regard to any of the facts of the case, that if they found that he had not complied with such rules and regulations, their verdict should be for the plaintiff." And in *Taxicab Co. v. Ottenritter,* 151 Md. 532, referring to the same principle, it was said: "It was the obvious pur-

pose of this rule to direct the order of precedence as between vehicles moving on intersecting roads or streets in such manner that their lines of progress will cross and that a collision may result if neither yields the right of way. *Buckey v. White,* 137 Md. 124. The statute does not specify hôw near a vehicle approaching from the right must be to the point of intersection in order to be entitled to the right of way with respect to a vehicle approaching from the left, nor what must be the proximity of the latter to the point of possible collision in order that the approach of one coming at a greater distance from the right may be disregarded. It would be difficult to prescribe such limitations upon the rule in view of the diversity of the conditions to which it must be applied. * * * The question whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts. The width of the intersecting highways, the speed of the vehicles, and various other conditions might materially affect the issue as to whether an asserted right of way should be recognized or denied." To the same effect are *Kelly v. Huber Baking Co.,* 145 Md. 334; *Gittings v. Schenuit,* 122 Md. 285; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 167 *et seq.;* and *Kaline v. Davidson,* 146 Md. 229. In *Sudbrook v. State,* 153 Md. 199, where the basis of the plaintiff's action was an alleged violation of that part of section 209, article 56 of the Code, which requires persons operating vehicles at the intersection of public highways to keep to the right of the center of such highways, it was said: "The argument is, also, fallacious in treating the evidence that the servant of the appellant had not kept to the right of the center of the highway as such negligence as would of itself justify a recovery. This position disregards the fact that the plaintiff must show affirmatively not only that the defendant was negligent, but also, assuming there was such negligence, that such negligence caused the accident, or whether in this particular case there was not such clear want of ordinary care to avoid the accident on the part of the officer as would make it irrational for a

reasonable person to believe the accident would have happened except for this failure of ordinary care in the officer himself."

It is apparent, from an examination of the evidence to which we have referred, that each of the parties to the cause attributed the happening of the accident to the violation of a different provision of the Motor Vehicle Law. The plaintiff contended that the collision would not have occurred if defendant's truck had been where the law required it to be, on the right side of the street, while the defendant asserted that plaintiff's alleged failure to yield the right of way was the direct and proximate cause of it. Neither theory was exclusive, and if there was in the case evidence to support both, then whether the accident was caused by plaintiff's failure to yield the right of way, or the position of defendant's truck, or was due in part to both causes, became a question of fact to be determined by a jury. But the vice of the prayer under consideration is that it excluded from the consideration of the jury evidence tending to show that the direct and proximate cause of the accident was the negligent operation of defendant's truck, for under its mandate the jury was bound to find for the defendant if they found that plaintiff failed to stop or slow down her car in time to permit defendant's truck to pass in front of her, even though they believed that she was not negligent, and that the direct and proximate cause of the collision was the act of defendant's chauffeur in driving on the wrong side of the street, and "cutting the corner".

There was in the case evidence tending to show that when appellant approached Albemarle Street she had reduced her speed to from eight to ten miles an hour, that she had sounded her horn, and was looking for vehicles coming north on that street into Baltimore Street, that Albemarle Street at that point is twenty-three and one-half feet wide with eight and a half foot pavements, and that she would have had at least nineteen feet in which to stop her car before reaching the projected center line of Albemarle Street, after reaching the

building line of that street, that had the truck been on the right side of that street it would have been visible to her at least several feet before she reached that point, that she had her car under control, that she could have stopped it before reaching the projected center line of Albemarle Street, or could, but for the truck, have turned into Albemarle Street, but that the truck as it turned into Baltimore Street had so far encroached on the left side of Albemarle Street that it was only three feet from its west curb line, and not only prevented her from turning into that street, but occupied at least eight of the eleven feet and nine inches between the projected curb line and center line of that street, and thus prevented her from stopping before the collision. Many of those facts were contradicted by other evidence in the case, but we are unable to say that the impeaching evidence was of such a character that it must be regarded as conclusive, so that the truth or falsity of the facts stated were for the jury to determine. If true, they afforded at least some evidence from which it might be inferred that the direct and proximate cause of the accident was the conduct of defendant's chauffeur in driving its truck on the wrong side of the street.

Whether that inference should have been drawn under all the facts and circumstances of the case was peculiarly a jury question, and since, by ignoring them, that prayer excluded from the consideration of the jury facts which permitted it, it should have been refused.

Appellant's "Seventh A" prayer asserted as a matter of law that, in the case of two vehicles approaching each other over intersecting highways, that on the right has an absolute right of way regardless of any other fact or circumstances. That proposition is untenable, and for reasons already stated the prayer should have been refused.

The same error vitiates defendant's eighth prayer, which is almost a precise copy of the defendant's fourth prayer in *Taxicab Co. v. Hamburger,* 146 Md. 122, but there is nothing in that case which can be construed as an approval of the

proposition which it submits, that as a matter of law in the case of vehicles approaching each other over intersecting highways the vehicle approaching from the right has an absolute and unqualified right of way. That prayer was granted in the case cited, and while the court there said, in referring to the refusal of defendant's sixth prayer, "the proposition contained in that prayer was fully covered and clearly presented by defendant's sixth prayer," that statement went no further than to hold that, even if the sixth prayer was unobjectionable, appellant was not injured by its refusal, because the proposition which it contained was covered in the fourth prayer. Whether that proposition was good or bad was not in issue, since the defendant in that case was the appellant, and it certainly was not in a position to assert that the court erred in granting that prayer at its request, nor did it attempt to do so.

Since appellant's objection to the remaining prayers granted at the instance of the appellee were in effect waived in this court, it only remains to consider whether the appellant was guilty of such contributory negligence as will in law bar her right to recover. To repeat the formula so often announced and so generally accepted that it has become axiomatic, "to establish contributory negligence as a matter of law, the act relied on must be distinct, prominent and decisive, and one about which ordinary minds cannot differ." *Maryland Ice Cream Co. v. Woodburn,* 133 Md. 298; *Carter's Digest,* secs. 221-255d. And in dealing with the question as to whether upon all the evidence the plaintiff was as a matter of law guilty of negligence contributing to the accident of which she complains, the truth of all evidence tending to support her claim and exclude that hypothesis must be assumed. *Chesapeake & Pot. Tel. Co. v. Merriken,* 147 Md. 572.

Applying those principles to the facts of this case, in our opinion, it cannot be said as a matter of law that the appellant was guilty of such negligence as would bar her right to recover. If the account of the accident given by the appel-

lant's witnesses is true, she approached the intersection at which the accident occurred at a moderate rate of speed, her automobile was under such control that she could have stopped it before she reached that part of the intersection where she was bound to anticipate the presence of other machines entering it from Albemarle Street; she was certainly not required as a matter of law to anticipate that such machines would in violation of the statute be on the wrong side of that street (*Brown v. Patterson,* 141 Md. 302); she watched for any "cars coming out" of Albemarle Street, but did not see defendant's truck until she was two or three feet west of the west building line of Albemarle Street, when it was about three feet from the west curb of that street, and then it was too late for her to avoid a collision with the truck if she kept on, and the position of the truck prevented her from avoiding a collision by turning into Albemarle Street. These facts, if true, were sufficient to support the inference that, in approaching the point at which the collision occurred, the plaintiff was in the exercise of reasonable care, and whether that inference should have been drawn from them was a matter of fact for the jury and not one of law for the court. Assuming, for the purpose of the question only, that these facts did show that plaintiff was negligent as a matter of law, yet unless such negligence was the direct and proximate cause of the accident, it would not bar her right to recover. *Taxicab v. Hamburger,* 146 Md. 129. And, as we have already pointed out, there was evidence in the case legally sufficient to permit the inference that the direct and proximate cause of the accident was the position of the defendant's truck. Whether upon the whole evidence the collision was caused by the failure of the plaintiff to yield the right of way, the position of defendant's truck, or a concurrence of both factors, could only have been determined by a consideration of all the facts and circumstances connected with the accident. Under such circumstances, whether the plaintiff was guilty of contributory negligence was a jury question. *Brown v. Patterson,* 141 Md. 293; *Merrifield v.*

*Hoffberger Co.,* 147 Md. 137; *Taxicab Co. v. Emanuel,* 125 Md. 259; *Fournier v. Zinn,* 257 Mass. 575; *Hullin v. Seattle Taxicab Co.,* 119 Wash. 311.

While this question was not directly presented by the exception, it has been considered, because if, as appellee contends, appellant was guilty of contributory negligence as a matter of law, then she was not injured by the action of the trial court in granting defendant's seventh, seventh A and eighth prayers. *Springer v. McCrea,* 132 Md. 698. But since that is not the case, and as other granted prayers do not remove the injury occasioned by the action of the court in granting the defendant's seventh, seventh A, and eighth prayers, the judgment appealed from must be reversed.

*Judgment reversed with costs, and new trial awarded.*