688 A.2d 998

TRI-TOWNS SHOPPING CENTER, INC.

v.

FIRST FEDERAL SAVINGS BANK
OF WESTERN MARYLAND.

No. 826, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Feb. 7, 1997.

Gorman E. Getty, III, Cumberland, for Appellant.

H. Gregory Skidmore (Skidmore & Alderson, on the brief), Cumberland, for Appellee.

Argued before MURPHY, C.J., and MOYLAN and CATHELL, JJ.

CATHELL, Judge.

"This case is an attempt to impose lender liability." [1] Tri–Towns Shopping Center, Inc., appellant, appeals from a summary judgment rendered against it and in favor of First Federal Savings Bank of Western Maryland, appellee, by the Circuit Court for Allegany County (Sharer, J., presiding). Appellant presents a compound question for our review:

Did the Trial Court err in granting summary judgment where there were material facts in dispute and the Appellee was not entitled to judgment in its favor as a matter of law?

## Standard of Review

In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists. *Arnold Developer, Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949 (1990); *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 408, 559 A.2d 365 (1989); *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985); *Markey v. Wolf*, 92 Md.App. 137, 170–71, 607 A.2d 82 (1992). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King*, 303 Md. at 111, 492 A.2d 608 (citing *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 8, 327 A.2d 502 (1974)). "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.'" *Seaboard Sur. Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242–43, 603 A.2d 1357 (1992) (quoting *Salisbury Beauty Schools v. State Bd. of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367 (1973)) (emphasis in original). We have further opined that in order for there to be disputed facts sufficient to render summary judgment inappropriate "there must be evidence on which the jury could reasonably find for the plaintiff." *Seaboard*, 91 Md.App. at 244, 603 A.2d 1357.

---

1. *Fairfax Sav., F.S.B. v. Kris Jen Ltd. Partnership*, 338 Md. 1, 655 A.2d 1265 (1995).

■  The Court of Appeals has also stated that "the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202 (1990) (citations omitted). The trial court, in accordance with Maryland Rule 2–501(e), shall render summary judgment forthwith if the motion and response show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. The purpose of the summary judgment procedure is not to try the case or to decide factual disputes, but to decide whether there is an issue of fact that is sufficiently material to be tried. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment,

> [i]t is . . . incumbent upon the other party to demonstrate that there is indeed a genuine dispute as to a material fact. He does this *by producing factual assertions, under oath,* based on the personal knowledge of the one swearing out an affidavit, giving a deposition, or answering interrogatories. "Bald, unsupported statements or conclusions of law are insufficient."

*Lowman v. Consolidated Rail Corp.*, 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied*, 307 Md. 406, 514 A.2d 24 (1986) (citation omitted; emphasis added). With these considerations in mind, we turn to the case *sub judice*.

### The Facts

In the 1970s and 1980s, appellee lent to appellant, in two transactions, the sums of $875,000 and $320,000. These loans were secured by mortgages and bill obligatories (notes) placed on the premises of the Tri–Towns Shopping Center, Inc., owned by appellant.

On May 27, 1983, appellee agreed with appellant that the property could be conveyed to Torresdale Plaza, Inc. (Torresdale), upon its assumption of the two mortgages. During this transaction, the mortgages were modified by a loan modifica-

tion agreement. Under the terms of the various agreements, appellant was to remain liable for the repayment of the mortgage sums even though Torresdale had assumed the payment. The property was then deeded (on June 1, 1983) to Torresdale. During this transaction, appellant, with appellee's knowledge, took back a mortgage from Torresdale, thereby becoming a junior lienholder.

In September 1992, appellee caused foreclosure proceedings against the subject property to be instituted. Thereafter, in December of 1992, appellant's exceptions to the report of sale were upheld, and the court declined to ratify the sale.

Subsequently, in June of 1993, appellee caused another foreclosure proceeding to be filed. After the sale, appellant again excepted to the report of sale. While the matter of the exceptions and the ratification of the sale was pending, appellant and appellee entered into a settlement agreement, whereby appellant "withdrew its Exceptions" and appellee "waived any deficiency claim it had or may have had [against appellant] under the terms of the mortgage." The sale was subsequently ratified.

Thereafter, in April of 1994, appellant brought suit against appellee alleging in two counts that appellee (1) tortiously interfered in appellant's mortgage (the junior lien) arrangements with Torresdale and (2) denied appellant its rights as a junior lienholder to have access to the property when appellant sought to make needed repairs, the lack of which resulted in a deterioration of the property to appellant's detriment as a junior lienholder. Only the second count is at issue here.

Before the circuit court, appellee filed a motion for summary judgment, alleging that the claim was barred by *res judicata.* Appellee's affidavit provided:

First Federal neither committed any act to inhibit Tri-Towns or Marsh [appellant's president] from effecting necessary repairs and maintenance to the Shopping Center nor prohibited Tri-Towns or Marsh from enforcing the obligations of Torresdale, Tri-Towns, and/or Marsh to effect

such necessary repairs and maintenance to the Shopping Center.

Marsh's affidavit, in his corporate capacity, in response, provided:

That First Federal Savings Bank of Western Maryland prohibited me from entering upon the property of Tri–Towns Shopping Center, Inc., for making any repairs to the property, including an offer made by me to inspect roofs on the buildings which were leaking at the time.

On August 30, 1995, the trial court granted appellee's motion for summary judgment as to appellant's second count. Count one was dismissed by stipulation of the parties.

### The Preclusive Effect of the Foreclosure Action

The exceptions filed by appellant in the final foreclosure proceeding indicated that the appellee:

1. . . . [F]ail[ed] to account for or disclose any credit for rental payments due and payable by tenants of [appellant,] which have in fact been paid to [appellee].

. . . .

3. [Appellant] is the holder of a [junior] Mortgage on the property. . . .

4. Torresdale Plaza, Inc., had agreed to convey the subject property to [appellant] in lieu of foreclosure. . . .

5. . . . Torresdale Plaza, Inc., forwarded to . . . [appellant] a copy of correspondence from [appellee] . . . prohibiting the transfer of title [to appellant]. . . .

Thereafter, appellant and appellee filed a "Withdrawal of Exceptions/Waiver of Deficiency Claims." It provided that the exceptions were withdrawn by appellant and that appellee waived its right to seek a deficiency decree against appellant. In relevant part, the pleading noted that:

8. [Appellant] . . . filed Exceptions to the Report of Sale. . . .

. . . .

10. [Appellant] hereby withdraw[s its] Exceptions to the Report of Sale *and consent[s] to the immediate Ratification of the Sale as set forth in the Order attached hereto and made a part hereof.* [Emphasis added.]

As we have previously noted, the only issue that is left for us to resolve is the correctness of the trial court's granting of the summary judgment as to Count II, which asserted that appellee denied appellant its rights as a junior lienholder during the pendency of the foreclosure proceedings. Appellant, in essence, alleged that because appellee denied entry to appellant for it to make repairs, the property had deteriorated and, therefore, it brought less at the sale and appellant was thereby deprived of access to a possible surplus.

## The Law

The trial judge granted appellant's Motion for Summary Judgment without rendering an opinion. Accordingly, we will address, as needed, the grounds alleged by appellee in its Motion for Summary Judgment as that motion related to Count II. Appellee first alleged that the instant case was barred by *res judicata.* It further alleged that the action was barred by reason of the settlement reached and filed in the foreclosure action, that it owed no duty to appellant that was susceptible to breach, and that appellant failed to join all necessary parties. In its affidavit, appellee averred, among other things, that it applied the rental income from the property towards its maintenance.

In its memorandum below, appellee asserted, in respect to the *res judicata* argument, as it does here, the holding of the Court of Appeals in *Fairfax Sav., F.S.B. v. Kris Jen Ltd. Partnership,* 338 Md. 1, 655 A.2d 1265 (1995), in which the Court of Appeals reversed this Court's reversal of the trial court's *res judicata* finding. Upon our review of *Kris Jen,* and a comparison of the facts of this case with *Kris Jen,* we conclude that the instant case is barred by the *res judicata* effect of the foreclosure proceeding. We shall affirm.

*Fairfax Savings F.S.B. v. Kris Jen Limited Partnership*

In 1988, Kris Jen Limited Partnership (Kris Jen), the mortgagor, borrowed $3,200,000 from Fairfax Savings, F.S.B. (Fairfax) for the purpose of constructing townhouses. The loan was secured by a deed of trust and the personal guarantee of the principals of Kris Jen. In 1989, Fairfax, the mortgagee, notified Kris Jen that the loan was in default and subsequently commenced foreclosure proceedings. The property was sold at foreclosure and when the report of sale was made, Kris Jen objected (excepted) to the ratification of the sale.

Thereafter, Kris Jen notified the trial court that it had no objection "in the [foreclosure] proceedings" to the ratification of the sale. *Id.* at 5, 655 A.2d 1265 (brackets in original). Fairfax objected to the withdrawal of Kris Jen's exceptions and sought a court order that would have resolved the exceptions in its favor. The court permitted Kris Jen to withdraw its exceptions and ratified the sale without resolving the issues.

While these proceedings were underway, Kris Jen filed a separate suit against Fairfax that was still pending when the report of sale was ratified. This second suit was the subject of the appeal. The Court of Appeals first summarized the allegations proffered by Kris Jen in its second amended complaint [2] as "options escrow" allegations, "default inducing" allegations, and "workout agreement" allegations. The workout agreement allegations also included assertions that Fairfax had breached a "fiduciary" duty to Kris Jen, breached a duty of good faith and fair dealing, and been negligent in performing its obligations under the workout agreement. The Court also classified other types of allegations in the complaint as "agreement denial" allegations, which Kris Jen asserted gave rise to defamation allegations on the part of Kris Jen's general partner.

---

2. It was a 110–paragraph, 31–page amended complaint.

The Court of Appeals noted that two of the allegations that the trial court had found to be barred by *res judicata* were: "they [Kris Jen] are not permitted in this action to assert . . . that the price obtained at the foreclosure proceeding was inadequate . . . [and] that Kris Jen and Seisman [the general partner] suffered damages as a result of the loss of the property by way of the foreclosure." 338 Md. at 8–9, 655 A.2d 1265.

It was noted that, in the subsequent action in the circuit court and before this Court, Kris Jen did not "challenge the purchase price . . . or the propriety of the [foreclosure] procedures." *Id.* at 12, 655 A.2d 1265. The Court noted that, accordingly, Kris Jen was saying to the Court of Appeals that "they do not seek to 'nullify' the foreclosure judgment, with the result that the subject action [the action subsequent to the foreclosure action] may be maintained." *Id.* The Court then noted portions of this Court's opinion, *Kris Jen Ltd. Partnership v. Fairfax Sav., F.S.B*, 100 Md.App. 25, 639 A.2d 206 (1994), rev'd, 338 Md. 1, 655 A.2d 1265 (1995).

After discussing Maryland Rule 2–331(a), the permissive counterclaim rule, noting the federal system's compulsory counterclaim rule, and commenting upon Restatement (Second) of Judgments § 22 (1982), and *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51 (1990), the Court, as relevant to the present case, first addressed the *in rem* and *in personam* nature of foreclosure cases and then, for our purposes, focused on the *Kris Jen* trial court's finding that issues of the adequacy of the purchase price and damages to the mortgagors were barred in a separate action brought subsequent to the foreclosure action.

After commenting on Chapter 3 of the Restatement (Second) and the exception in section 22, the *Kris Jen* Court noted:

Thus, it is possible for a mortgage foreclosure proceeding in Maryland in which no deficiency decree is sought to be purely *in rem*. It is also possible, if the mortgagor voluntarily appears, for the proceeding to include judgments in

the form of rulings on exceptions to the sale and to the auditor's report, respectively, that have *in personam* collateral estoppel effect.

In the instant matter, Kris Jen personally appeared in the foreclosure action and filed exceptions to the report of sale. Those exceptions, however, were never adjudicated, so that we are not concerned in this case with collateral estoppel or issue preclusion against the Plaintiffs, but with *res judicata*. Consequently, any preclusive effect that the order of ratification in this matter may have, greater than the preclusive effect that a foreclosure judgment would have if entered without any exceptions having been filed, is necessarily dependent on [Kris Jen's] voluntary appearance in the foreclosure proceeding.

338 Md. at 16–17, 655 A.2d 1265. In the case *sub judice*, appellant voluntarily appeared in the prior foreclosure by filing exceptions (an objection to the ratification of the report of sale). Interestingly, the *Kris Jen* Court discussed *Bainder v. Sound Bldg. & Loan Ass'n*, 161 Md. 597, 158 A. 2 (1932). In *Bainder*, there were no exceptions taken to the report of sale, and the sale was ratified. Bainder thereafter attempted to except to the auditor's report and appealed the unsuccessful result. The *Kris Jen* Court noted that in *Bainder*, it had opined:

"... [F]or there can be no real doubt that, if Bainder as mortgagor personally was liable for any deficiency, he would have been interested in having the property sold for enough to discharge his liability, and he would have been entitled to protect that interest by objecting to the ratification of a sale unfairly or improperly made.... And since he could have excepted to the ratification of the foreclosure sale, but failed to do so, he is bound by it as completely as if he had objected to it. *The effect of that decree was to establish the mortgage debt as a valid and subsisting debt enforceable against the mortgaged property, but not to establish the personal liability of Bainder for the payment of that debt.* That question cannot arise unless and until the mortgagee, by a petition or motion for a decree *in personam* or other

appropriate proceeding attempts to establish that liability. . . . "

338 Md. at 18–19, 655 A.2d 1265 (*quoting Bainder,* 161 Md. at 603–04, 158 A. 2).

In the case *sub judice,* appellant challenged the ratification of the sale by filing exceptions and then obtained an agreement, while its exceptions and objections to the sale were pending, that appellee would not seek a deficiency judgment against appellant in return for appellant's abandonment of its objections to the ratification of the sale. Thus, while appellee did not create an *in personam* "effect" by seeking a deficiency decree, appellant created it by filing exceptions and, then, in anticipation of a deficiency decree, procuring appellee's waiver of its right to a deficiency. The foreclosure sale, therefore, was both *in rem* and *in personam.*

As does the mortgagor in the present case, the mortgagor in *Kris Jen* asserted:

"[P]ursuant to Maryland law, there is no remedy within the actual foreclosure action for Kris Jen to file a compensable claim for any wrongdoing or breach on the part of Fairfax. Further, this expedited proceeding in equity affords the defending party no right to a jury trial. In short, procedurally, a foreclosure action does not provide an appropriate forum for Kris Jen's remedies at law. Fairfax's assertion that Kris Jen proceed with this counterclaim in this limited forum, directly contravenes the rationale behind Maryland's permissive counterclaim rule which allows the defendant to choose the time and place to bring a claim."

*Id.* at 21, 655 A.2d 1265 (brackets in original). The Court of Appeals disagreed, stating "[t]oday, however, nothing in the Maryland Rules of Procedure prohibits a mortgagor who voluntarily appears in a mortgage foreclosure proceeding from filing a counterclaim" and held that Kris Jen could have asserted its claims in the mortgage foreclosure proceeding. *Id.* at 21–22, 655 A.2d 1265.

The *Kris Jen* Court, in explaining its holding, discussed at length cases from several foreign jurisdictions. It noted that

*A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A.*, 184 Wis.2d 465, 515 N.W.2d 904 (1994), applies the [Restatement (Second) of Judgments] § 22(2)(b) exception more broadly than did *Carey* [*v. Neal, Cortina & Assocs.*, 216 Ill.App.3d 51, 159 Ill.Dec. 551, 576 N.E.2d 220 (Ill.App.Ct.1991)]. After the foreclosure the borrower sued the lender claiming that the lender had misrepresented the investment quality of the mortgaged properties at the time the borrowers had purchased them, that the lender breached the loan agreement regarding the schedule for payments and providing for an extension of additional credit to make repairs, and that the lender had failed properly to manage the property and to credit rentals. The Supreme Court of Wisconsin concluded that successful prosecution of those claims "would nullify the prior foreclosure action or impair rights established in the initial action." 515 N.W.2d at 910. The court viewed the misrepresentation allegations as a claim that the mortgage obligation was not valid. It viewed the breach of contract claims as allegations that, absent the bank's action, the borrower would not have been in default. The court viewed the claim concerning insufficient credits as an attempt again to put in issue the amount owed under the mortgage. A judgment in favor of the borrower in the second action "would thus directly undermine the original default judgment in which the court held that under the circumstances, foreclosure was proper." *Id.* at 910–11. Then, reinforcing with a running account-restitution kind of analysis, the court further observed that if the borrower recovered damages from the bank, the judgment awarding the bank "the amounts due on the properties and additional costs would be rendered meaningless," in that the bank "could be essentially forced to return its previous recovery."

338 Md. at 29, 655 A.2d 1265.

The Court concluded by observing:

Indeed, there probably is no single, relatively concrete or bright-line test for identifying cases subject to the exception in § 22(2)(b) and those subject to the general rule in § 22(2)(a) of no preclusion. The weight to be given to the

policy of repose may vary between types of actions and based on the facts.

*Id.* at 31, 655 A.2d 1265. It held, based upon the facts of that case, that allegations that there was no event of default in the subsequent case

> negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment. . . .

> We emphasize[ ] that the above holding is not intended to express the full range of the § 22(2)(b) exception to the general rule of non-preclusion.

*Id.* at 31, 655 A.2d 1265.

■ We now compress and summarize the directly pertinent factors asserted in the subsequent proceeding by appellant, Tri–Towns Shopping Center, Inc. Appellant asserts that while appellee had valid possession of the subject property as a first lienholder, it interfered with appellant's rights as a junior lienholder to repair and maintain the premises, thus causing monetary damages to appellant. The only damages that appellant, in its status as a junior lienholder, could have incurred, even if its allegations are true, was a claim for any surplus proceeds of the sale. The only vestigial rights and liabilities, *if any,* that it had as the original mortgagor would have been as to the surplus proceeds or as to a deficiency decree (as the case may be), if any, resulting from the sale.[3] It had conveyed its rights to the property itself to Torresdale. Appellant's claims, therefore, however worded or artfully phrased, are essentially a claim that appellee improperly allowed the property to deteriorate, thus reducing the price received at the foreclosure sale. It is, in our view, a disguised attack on the adequacy of the purchase price obtained at the foreclosure sale. Any damages received by appellant on the claim here asserted would reduce the sum that appellee received from the mortgage foreclosure proceedings. Appellant's rights as against appellee as a junior lienholder derived

---

3. It may well have had rights under its junior mortgage against its mortgagor, Torresdale. Any such rights are not at issue here.

only through whatever interest it retained in the property. It had no other relationship with appellee. In the posture of this case, absent its interest as a junior lienholder, appellant would have no standing to assert these claims in the first instance.

We hold that when a junior lienholder excepts to the ratification of a mortgage foreclosure sale, *i.e.*, appears *in personam*, it is generally precluded, on *res judicata* grounds, from thereafter filing a separate suit based upon the alleged improper actions of the mortgagee that occurred prior to the sale of the mortgaged property and that are directly or indirectly alleged to have caused the purchase price to be inadequate.

Were we to have reached the issue of the executory accord, whereby appellant withdrew its exceptions to the foreclosure sale in exchange for appellee's commitment that it would not pursue a deficiency decree, we would have initially acknowledged the strong public policy favoring the upholding of such settlement agreements. We do not, however, resolve that issue at this time.[4]

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

4. We have noted and reviewed all of the arguments presented. Because of our opinion, we decline to address them further.