705 A.2d 125

**Richard B. ROBB, Jr.**

v.

**Peter Franklin WANCOWICZ.**

**No. 625, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 3, 1998.

532

Byron L. Warnken, Baltimore (Law Offices of Bonnie L. Warnken, Baltimore, and John E. Raine, III, Barnes and Raine, P.A., Towson, on the brief), for Appellant.

H. Patrick Stringer, Jr. (Mudd, Harrison and Burch, on the brief), Towson, for Appellee.

Argued before HOLLANDER, KENNEY and BYRNES, JJ.

BYRNES, Judge.

Appellant Richard B. Robb, Jr. ("Robb") challenges the ruling of the Circuit Court for Baltimore County granting summary judgment in favor of appellee Peter Franklin Wancowicz ("Wancowicz") on claims brought against him for negligent entrustment, negligence, and civil conspiracy. He pres-

ents two questions for review, which we have separated into four questions and rephrased as follows:

I. Whether the trial court erred in granting summary judgment when there were genuine disputes of fact.

II. Whether the trial court erred in ruling that Wancowicz was entitled to judgment as a matter of law on the negligent entrustment claim.

III. Whether the trial court erred in ruling that a statutory violation by Wancowicz could not constitute evidence of negligence against Robb.

IV. Whether the trial court erred in ruling that Wancowicz was entitled to judgment as a matter of law on the civil conspiracy claim.

Finding no error on the part of the trial court, we affirm the entry of summary judgment in favor of appellee.

## FACTS

On October 7, 1993, Carol Lunner ("Lunner") took possession of a 1976 Chevrolet Malibu from one Delma Thomas. Lunner was the owner of the Malibu, having inherited it from her mother, who had died on May 1, 1993. Lunner had allowed Thomas to use the Malibu for some time after she inherited it. When Lunner asked Thomas to return the car and Thomas refused, Lunner took it and drove it to the Baltimore County apartment complex at which she lived. Lunner left the Malibu in the apartment complex parking lot. Approximately one week later, Thomas went to the parking lot and removed the license plates from the Malibu.

For several weeks, Lunner left the Malibu parked in her lot, without license plates. Soon Lunner became concerned that the car would be towed away because it did not have license plates affixed to it. She called Wancowicz, who is her father, and asked him to help her move the car off of the parking lot to his residence in Harford County. Wancowicz had in his garage an expired set of Maryland license plates, ALH 124, that had been issued for a vehicle that his son inherited from his (Wancowicz's) father. Wancowicz's son had retitled that

car to his own name and had obtained new plates; he had failed, however, to return the old plates to the Motor Vehicle Administration. Wancowicz took the expired plates to Lunner's apartment parking lot, affixed them to her Malibu, and drove the Malibu to his house in Harford County.

According to Wancowicz, he later removed the expired license plates from the Malibu and put them back on a shelf in his garage. Lunner's testimony on that issue is ambiguous, but could be construed to mean that, to her recollection, the expired plates were not removed from the Malibu after Wancowicz drove it to Harford County. The Malibu remained in Wancowicz's garage until early November, 1993. At that time, Lunner either reaffixed the expired plates to the Malibu and started driving it regularly or started driving it regularly without having to reaffix the expired plates, as they were still attached. In either case, from November, 1993 forward, Lunner drove the Malibu on a regular basis, with license plates ALH 124 displayed.

In January, 1995, Lunner moved out of her Baltimore County apartment and moved in with Wancowicz while she searched for a new place to live. Lunner had a history of negligent driving, about which her father was aware. On February 2, 1995, Lunner drove her Malibu across the center line of Jarettsville Pike, in Baltimore County, and collided head-on with a vehicle driven by Robb. Robb and Lunner both suffered serious personal injuries in the accident. Lunner acknowledges that she was speeding right before the impact and that she had been drinking alcohol earlier that day. She claims that the steering wheel of the Malibu locked, making it impossible for her to control the car.

On July 13, 1995, Robb filed suit against Lunner in the Circuit Court for Baltimore County, alleging negligence. Lunner did not file an answer and a default order was entered against her. On October 13, 1995, Robb filed an amended complaint, adding Wancowicz as a defendant and alleging negligent entrustment, negligence, and civil conspiracy against him.

Wancowicz moved for summary judgment on all of the claims against him. On February 11, 1997, after Robb had filed his opposition to the motion, the court held a hearing and granted summary judgment in favor of Wancowicz on all counts. Thereafter, the court conducted an inquisition on damages and, on March 11, 1997, issued an order entering judgment in favor of Wancowicz and entering judgment against Lunner, for $719,668.95, plus costs. Robb then noted this appeal.

## STANDARD OF REVIEW

In reviewing a trial court's ruling granting summary judgment, our task is to decide whether there is a genuine dispute of material fact and whether the lower court's ruling is legally correct. *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974); *McKinney Drilling Co. v. Mach I Ltd. Partnership,* 32 Md.App. 205, 209, 359 A.2d 100 (1976).

## DISCUSSION

### I.

### *Disputes of Fact*

Robb contends that the trial court's granting of summary judgment in the face of two genuine disputes of fact was erroneous. The first dispute of fact concerns whether Wancowicz left the expired license plates on the Malibu after he drove it to Harford County. The second dispute is over whether Wancowicz knew that Lunner was driving the Malibu with the expired license plates on it.

To enter summary judgment, the trial court must find, *inter alia,* that there is "no genuine dispute of material fact." Md. Rule 2–501(e). A "material fact" is one " 'the resolution of which will somehow affect the outcome of the case.' " *Goodwich v. Sinai Hosp. of Baltimore,* 343 Md. 185, 206, 680 A.2d 1067 (1996)(*quoting King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)); *Fearnow v. Chesapeake & Potomac Tel. Co.,* 104 Md.App. 1, 49, 655 A.2d 1 (1995), *aff'd in part, rev'd in*

*part,* 342 Md. 363, 676 A.2d 65 (1996). "[F]or there to be disputed facts sufficient to render summary judgment inappropriate 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Tri–Towns v. First Federal,* 114 Md.App. 63, 65, 688 A.2d 998, *cert. denied,* 346 Md. 28, 694 A.2d 950 (1997)(*quoting Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 244, 603 A.2d 1357 (1992)).

At the close of the summary judgment hearing, immediately before granting the motion, the trial judge stated that he found "nothing that reaches out to give me something to show a dispute as to a material fact." The court was aware, from the memoranda submitted and the argument of counsel, that disputes of fact existed. The court ruled, however, that, even resolving the disputes of fact in Robb's favor (*i.e.,* assuming that Wancowicz did not remove the license plates from the Malibu after he drove it to Harford County and that he knew that Lunner was driving the Malibu on a regular basis with the expired plates affixed to it), Wancowicz was entitled to judgment in his favor, as a matter of law. If that determination was legally correct, the mere existence of disputed facts is of no consequence, as any such facts are by definition not material.

## II.

### *Negligent Entrustment*

In his amended complaint, Robb alleged that Wancowicz negligently entrusted to Lunner the expired license plates that had been issued for another vehicle, thereby facilitating her operation of her Malibu automobile, "a potentially dangerous instrumentality if operated in a negligent and unsafe manner." The trial court ruled that, on the undisputed facts and resolving any disputes of fact in favor of Robb, the evidence could not support a negligent entrustment claim. Robb argues that this ruling was legally incorrect. We disagree.

Maryland has adopted the doctrine of negligent entrustment as set forth in the Second Restatement of Torts:

One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965); *Broadwater v. Dorsey,* 344 Md. 548, 554, 688 A.2d 436 (1997). As the trial court observed, and as is undisputed, the license plates that Robb contends Wancowicz negligently entrusted to Lunner were simply pieces of metal that were not inherently dangerous instrumentalities and did not cause any harm themselves. The essence of Robb's negligent entrustment claim is that, by supplying these license plates to Lunner, Wancowicz enabled Lunner to use a chattel (her car) and that she then did so negligently, so as to cause his physical injuries.

If there were any doubt that Robb's negligent entrustment claim lacked vitality when the trial court issued its summary judgment ruling, that doubt was erased by the Court of Appeals's decision in *Broadwater v. Dorsey, supra.* In that case, the Court held that parents who entrusted an automobile to their adult child, with knowledge of the child's history of reckless driving, could not be held liable in damages to a third party who subsequently was injured by the child's negligent driving. The adult child of the defendants in *Broadwater* was a mentally ill drug addict who had been involved in numerous traffic accidents, from the age of fifteen. His driving record was replete with speeding violations and other traffic infractions. The parents purchased a sports car and transferred it to their son, who retitled it in his own name. Thereafter, the son drove the sports car across the center line of a highway, causing an automobile accident in which the plaintiff sustained serious personal injuries.

The Court based its holding on the parents' legal inability to control and lack of responsibility to control their adult son's conduct, as well as their lack of control over the use of the

automobile involved in the accident. In reversing a jury verdict in favor of the plaintiff, the Court explained:

> We must … focus on the [defendants'] rights as the parents of an adult child, not their influence on [their adult child]. Generally, when a child reaches the age of majority, the parent's legal responsibility ends and, concomitantly, the parent's legal right to control the actions of the child also ends. [The defendants] had no legal right to control [the adult child] at the time of the accident because he was an adult. Their continuing financial support of their son does not confer on them any legally cognizable right to control his actions. Nor did [the defendants] have any right of control over the [car] involved in the accident. Regardless of whether [the defendants] sold [their son] the car or gave it to him as a gift, under the circumstances of this case, their ability to exercise control over the car ended when they relinquished title.

344 Md. at 562–63, 688 A.2d 436.

Also instructive is *Neale v. Wright,* 322 Md. 8, 585 A.2d 196 (1991), in which the Court held that a wife did not "supply" an automobile to her husband, for purposes of the tort of negligent entrustment, by titling the vehicle in their joint names. The Court observed:

> [I]n order for [the wife] to have "supplied" the car to [her husband] at the time of the accident, and thus be liable under a negligent entrustment theory, she had to have the power to permit or prohibit [him] from using the vehicle. That power could emanate from a superior right to control the operation of the car or from a special relationship between the "entrustor" and the driver, such as a parent-child relationship. [The wife] in this case did not have the power to permit or prohibit [her husband's] use of the [car] because, as co-owner, she did not have superior rights to it.

*Id.* at 19, 585 A.2d 196 (citations omitted).

At the times relevant to Robb's claims against Wancowicz, Lunner was an adult (in her early thirties) who held a valid driver's license. Wancowicz had no legal right to exercise

control over Lunner. Lunner owned the Chevrolet Malibu that she was driving when she collided with Robb's vehicle. Wancowicz could not control Lunner's access to her car, whether she drove the car, or whether she drove the car carefully. Moreover, Wancowicz had no legal right to control Lunner's use of the expired plates (which belonged to neither one of them) after he affixed them to her car.

Robb assumes, incorrectly, that Lunner would not have been able to drive at all had Wancowicz not supplied her with the expired license plates in question. He concludes from that assumption, also incorrectly, that Wancowicz exercised control over Lunner's driving. Even if the Malibu were the only vehicle to which Lunner had access (a point on which Robb offered no proof), it is clear that Lunner did not need the expired license plates that Wancowicz affixed to the Malibu to be able to drive that car at all or to be able to drive it without the risk of being stopped by the police for not having license plates. Obviously, the license plates were not mechanically necessary to the operation of the car. More to the point, when the license plates issued for the Malibu were stolen by Thomas, Lunner was entitled (and indeed was required) to affix to the car a temporary plate bearing the vehicle's registration number. Md.Code Ann., (1992 Repl.Vol.), § 13–415(e) of the Transportation Article (hereafter "T.A."). She could have used a temporary plate for the Malibu until she obtained replacement license plates.

█ Under *Broadwater*, if Wancowicz had owned the Malibu and had given it to Lunner to use, with knowledge of her history of reckless driving, he would have no liability to Robb for damages for injuries caused by Lunner's negligent operation of the vehicle. It stands to reason that if Wancowicz would not be liable to Robb for supplying a car to Lunner to drive, he could not be liable to Robb for supplying Lunner license plates for that car. As Lunner's father, Wancowicz had no legal right to control her continued use of the expired license plates or her use of the Malibu; nor was there a special relationship between Lunner and Wancowicz from

which a jury could reasonably infer that Wancowicz had the authority to exercise control over Lunner's driving. Wancowicz does not bear any legal responsibility for the use that Lunner made of the expired license plates or of her Chevrolet Malibu. The trial court's grant of summary judgment on the negligent entrustment claim was legally correct.

## III.

### *Negligence*

Robb argues next that the trial court erred in granting summary judgment in favor of Wancowicz on the negligence claim because Robb produced evidence demonstrating that Wancowicz violated certain provisions of the Maryland Transportation Article. Specifically, Robb contends that Wancowicz violated T.A. §§ 13–411(g) and 13–703(c) by affixing the expired license plates to Lunner's Malibu. He argues that these statutory violations furnished evidence of negligence on Wancowicz's part.

In deposition, Wancowicz admitted to violating T.A. § 13–411(g). That statute prohibits a person from "display[ing] or permit[ting] to be displayed on any vehicle used or driven in this State any registration plate issued for another vehicle." Robb asserts that Wancowicz also violated T.A. § 13–703(c), which prohibits a person to whom a registration plate has been issued from knowingly permitting its use by a person not entitled by law to use it.

Wancowicz could not have violated T.A. § 13–703(c) because the expired license plates that Lunner used on the Malibu were not issued to him. Indeed, when he opposed Wancowicz's motion for summary judgment, Robb made no mention of T.A. § 13–703(c). Rather, he asserted that Wancowicz and Lunner each violated T.A. § 13–703(g), which prohibits a person from "display[ing] on or for a vehicle any registration plate that is neither ... [i]ssued for the vehicle ... [n]or

[o]therwise lawfully used on or for the vehicle ..."[1] The only time that Wancowicz "displayed" the expired license plates on the Malibu, however, was when he drove it to Harford County, in October, 1993. Robb does not mention T.A. § 13–703(g) in his brief to this Court. Thus, the only question relating to the negligence claim that has been preserved and not waived on appeal is whether the trial court's summary judgment ruling in favor of Wancowicz was legally correct in light of the undisputed fact that Wancowicz violated T.A. § 13–411(g). The answer to that question is yes.

In *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 642 A.2d 219 (1994), the Court of Appeals explained:

> "The violation of a statute may furnish evidence of negligence." *Atlantic Mutual v. Kenney*, 323 Md. 116, 124 [591 A.2d 507] (1991). It may be actionable when it causes harm to a person within the class of persons the statute seeks to protect and the harm is the kind that the statute was designed to prevent. Although the violation of a statute is evidence of negligence it "is not per se enough to make a violator thereof liable for damages." *Liberto v. Holfeldt*, 221 Md. 62, 65 [155 A.2d 698] (1959). For that to occur, the plaintiff must show that the violation was a proximate cause of his or her injury ... that "had not been interrupted by a break in the chain of causation." *Holfeldt*, 221 Md. at 65 [155 A.2d 698].

*Id.* at 155–56, 642 A.2d 219 (citations omitted). *See also Hammond v. Robins*, 60 Md.App. 430, 483 A.2d 379 (1984) (evidence that defendant dog owner violated a county animal control ordinance designed to protect the public against personal injuries caused by "roaming animals" by keeping her

---

1. During the summary judgment hearing before the circuit court, Robb asserted that Wancowicz violated T.A. § 13–708, which provides that, if the registration or title of a vehicle is canceled, the owner of the vehicle or the person in possession of the vehicle must return the registration plates to the Motor Vehicle Administration. The trial court ruled that this statute had no applicability to Wancowicz under the circumstances of this case, as he did not own or possess the vehicle for which the expired license plates were issued. Robb has not contested that ruling on appeal.

dog untethered in her open yard admissible as evidence of negligence in a suit for personal injuries sustained by the plaintiffs when the defendant's dog darted in front of their tandem bicycle).

The Court of Appeals has long held, in automobile tort cases, that evidence of a violation of a duty imposed by a "Rule of the Road" statute, which, by definition, relates to "the driving of vehicles on highways," *see* T.A. § 21–101.1(a), is evidence of negligence when the violation was the proximate cause of the accident. *Norris v. Wolfensberger*, 248 Md. 635, 640–41, 237 A.2d 757 (1968) (violation of statutory duty to turn left from left lane is evidence of negligence if violation was proximate cause of accident); *Miller v. Mullenix*, 227 Md. 229, 232–33, 176 A.2d 203 (1961) (violation of statutory duties not to pass within 100 feet of intersection and not to cross double line is evidence of negligence when violation proximately caused collision); *Sun Cab Company v. Cusick*, 209 Md. 354, 360–61, 121 A.2d 188 (1956) (violation of statutory duty to drive on right side of the road is evidence of negligence when violation directly and proximately caused collision); *Brown v. Bendix Aviation Corp.*, 187 Md. 613, 619, 51 A.2d 292 (1947) (violation of statutory duty to yield right of way to pedestrian is evidence of negligence); *Whitt v. Dynan*, 20 Md.App. 148, 154, 315 A.2d 122 (1974) (violation by pedestrian of the statutory duty to walk on the left side of the highway, facing traffic, is evidence of contributory negligence in a wrongful death action arising out of collision between driver/defendant and pedestrian/decedent).

■ Evidence that Wancowicz violated T.A. §§ 13–411(g) cannot be evidence of negligence in the case *sub judice* because Robb, as the operator of a motor vehicle, was not within the class of people that this statute was intended to protect. Title 13 of the Transportation Article is entitled "Vehicle Laws—Certificate of Title and Registration of Vehicle." The statutes that appear in Title 13 are regulatory provisions that control the identification, classification, and registration of motor vehicles. They are not "Rules of the Road" and they generally do not pertain to the operation of

motor vehicles on the highways or the safety of drivers or vehicle occupants. To the extent that some of the statutes in Title 13 pertain to driving, they do not apply to this case. For example, T.A. § 13–411(d) imposes a duty upon the driver of a vehicle not to drive it unless it bears license plates issued to the vehicle; in this case Wancowicz was not the driver of the Malibu. Likewise, T.A. § 13–411(e) imposes a duty upon the owner of a vehicle not to permit it to be driven without license plates issued for the vehicle; here, Wancowicz did not own the Malibu.

The purpose of T.A. § 13–411(g) is to promote easy identification of motor vehicles and determination of ownership of vehicles. The statute provides aid to law enforcement officers and generates revenue. Its primary purpose is not to prevent or lessen the risk of unskilled driving and thereby to protect people from sustaining injuries in automobile accidents. The statute did not impose a duty of care upon Wancowicz relating to the safety of drivers or vehicle occupants on the highway. The trial court correctly ruled that evidence that Wancowicz violated T.A. § 13–411(g) did not constitute evidence that he breached a duty of care to Robb.

The trial court also correctly ruled that Wancowicz's statutory violation was not the proximate cause of the automobile accident in which Robb sustained injuries, as a matter of law. In *Kelly v. Huber Baking Co.*, 145 Md. 321, 125 A. 782 (1924), the Court of Appeals explained that, for the violation of a statute to be the proximate cause of an injury, and thus evidence of negligence, the conduct prohibited by the statute must be the conduct that caused the injury:

> [T]he mere violation of an ordinance or statute by a defendant will not of itself support an action for injuries sustained, but that it must be shown that the act which constituted the breach of the ordinance or statute was the proximate cause of the accident.

*Id.* at 335, 125 A. 782.

Robb asserts that Wancowicz permitted Lunner to display on her vehicle an expired license plate that had been issued

for another vehicle, thereby violating T.A. § 13–411(g). Even if we assume that to be the case, the automobile accident between Lunner and Robb was not brought about by this act. Indeed, it goes without saying that there was no cause and effect relationship between the appearance of the expired license plate on Lunner's Malibu and the happening of the accident. The accident was caused by Lunner's careless driving, not by the license plate that was affixed to her car at the time.

Robb argues that Wancowicz's violation of T.A. § 13–411(g) was the proximate cause of the automobile accident because it was reasonably foreseeable that permitting Lunner to display the expired license plates on her Malibu would enable her to drive the Malibu; that, once she was able to drive the Malibu, she would do so carelessly, as she had done in the past; and that Lunner's careless driving would expose others, including Robb, to the risk of injury.

■ This argument is substantively indistinguishable from Robb's negligent entrustment argument, and fails for the same reasons. The accident was caused by Lunner's driving; whether Lunner drove her car and how she drove it were actions entirely within Lunner's control and entirely outside Wancowicz's control. For wrongful conduct to be a proximate cause of an injury, it first must be a cause in fact of the injury: *i.e.*, there must be proof that, but for the wrongful conduct, the injury would not have occurred. *See Baltimore Gas and Elec. Co. v. Lane,* 338 Md. 34, 51, 656 A.2d 307 (1995); *Yonce v. SmithKline Beecham Clinical Laboratories, Inc.,* 111 Md. App. 124, 137–38, 680 A.2d 569, *cert. denied,* 344 Md. 118, 685 A.2d 452 (1996). Wancowicz's conduct in permitting Lunner to display the expired plates on her car was not a cause in fact of her driving the car, as she could have driven it with replacement tags. As Wancowicz's conduct was not a cause in fact of Lunner driving the Malibu, it could not have been a cause in fact of her driving the Malibu carelessly.

Not only is there an absence of "but for" causation in this case, the degree of foreseeability necessary to establish proxi-

mate cause is likewise lacking. In *Liberto v. Holfeldt*, 221 Md. 62, 155 A.2d 698 (1959), the defendant left his car keys in the ignition of his automobile, in violation of a statute that prohibited leaving unattended vehicles running. A thief stole the car and, five days later, involved it in an automobile accident with the plaintiff, who sustained injuries. The Court held that the defendant's violation of a statutory duty was not the proximate cause of the plaintiff's injuries as it "was not foreseeable that the thief would be involved in an accident five days later and [ ]the negligence of the thief was an independent intervening cause which was in fact the proximate cause of the accident." *Id.* at 67, 155 A.2d 698.

In the case *sub judice*, it was not reasonably foreseeable that, as a consequence of Wancowicz affixing an expired license plate for another car to his adult daughter's car to move it to his property, his daughter would continue to drive the car and, more than a year later, negligently cross the center line and injure another driver. Lunner's action in continuing to display the expired license plate on her Malibu was itself unrelated to her negligent driving; and her negligent driving was an intervening act for which she alone was responsible. *See Hartford Ins. Co. v. Manor Inn, supra,* at 157–60, 642 A.2d 219.

## IV.

### *Civil Conspiracy*

A civil conspiracy is:

"a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff."

*Yousef v. Trustbank Sav., F.S.B.,* 81 Md.App. 527, 538, 568 A.2d 1134 (1990)(*quoting Allen v. Bethlehem Steel Corp.,* 76 Md.App. 642, 653, 547 A.2d 1105, *cert. denied, Green & Vernon Green Assoc. v. Allen,* 314 Md. 458, 550 A.2d 1168 (1988)). "No action in tort lies for conspiracy to do something

unless the acts actually done, if done by one person, would constitute a tort." *Domchick v. Greenbelt Consumer Services,* 200 Md. 36, 42, 87 A.2d 831 (1952).

██ Robb contends that Lunner and Wancowicz entered into an agreement to violate the law by affixing an expired license plate for another vehicle to Lunner's Malibu. Even if this were true, Wancowicz's conduct did not constitute a tort against Robb, as we have explained. Moreover, Robb produced no evidence, and it is clear there is no evidence, to demonstrate that the purpose to be accomplished by the agreement was perpetration of tortious conduct by Lunner against Robb or anyone else.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**